IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

UNITED STATES OF AMERICA                                                                                    PLAINTIFF

v.                                              Case No. 4:09CR00285 JLH

ABRAM HARRIS
DIANE SMITH                                                                                               DEFENDANTS

## OPINION AND ORDER

Abram Harris and Diane Smith have been indicted for knowingly and intentionally possessing with the intent to distribute approximately 155 pounds of a mixture or substance containing a detectable amount of marijuana in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). The marijuana was found in the trailer of a tractor/trailer rig driven by Harris during an inspection at a weigh station in Arkansas. Harris made statements during the inspection and after his arrest that the defendants contend must be suppressed pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The defendants also contend that the physical evidence must be suppressed because it was discovered during a warrantless search in violation of the Fourth Amendment. The Court has held a suppression hearing on the matter. For the following reasons, the defendants' motions to suppress are denied.

I.

On the afternoon of August 5, 2009, Harris drove a tractor/trailer rig into the Lehi Weigh Station near West Memphis, Arkansas, where Private First Class James Hamrick of the Arkansas Highway Police was weighing trucks. Smith was a passenger in the truck. As Harris pulled the rig onto the scale, Hamrick noticed that the Department of Transportation number on the side of the truck was not displayed properly. Hamrick asked Harris to pull the vehicle over and to bring his

logbook and paperwork into the station for an inspection. During the inspection of Harris's paperwork, Hamrick found that Harris's logbook had no entry for the past three days, and his commercial driver's license was suspended or noneligible. Harris could not explain where he had been during the preceding three days. The vehicle was registered to a company that Harris said that he owned. During the inspection of the paperwork, Hamrick asked Harris if he had anything illegal in the truck, and Harris responded, "What do you mean by illegal?" Hamrick then asked whether he had alcohol in the vehicle, and Harris said that he had a couple of bottles of wine. Hamrick also asked if Harris had a radar detector in the truck; Harris said that he did. That Harris possessed alcohol and a radar detector in the truck violated the Federal Motor Carrier Safety regulations.[1]

As a part of his inspection for regulatory compliance, Hamrick inspected the truck and trailer as well as the paperwork. Before inspecting the vehicle, Hamrick asked Harris if he could search the inside of the truck and the trailer, and Harris said that he could. Harris then signed a consent to search form authorizing Hamrick to conduct the search. PFC Darriel Ezell stood by to assist Hamrick with the search. As he approached the vehicle, Hamrick informed Smith, who was sitting in the passenger seat of the cab, that Harris had given him permission to search the vehicle. Hamrick asked Smith if she had any personal belongings in the vehicle and if she would like to get those belongings or if it would be okay for him to look at them while he was in there. Smith gave him permission to look. Hamrick found and retrieved the two bottles of wine and radar detector from the cab of the truck. He proceeded to inspect the contents of the trailer. The trailer was loaded with pallets containing buckets of sauce, as indicated on the bill of lading. A number of buckets had

---

[1] *See* 49 C.F.R. § 392.5(a)(3) (2009) (regulating possession of alcohol); 49 C.F.R. § 392.71 (prohibiting the use of radar detectors).

fallen over, which, according to Hamrick, is uncommon. The common practice is to secure the load so that the product is not damaged in transit. Hamrick noticed a roll of shrink wrap near the rear of the trailer. In addition to the load described in the bill of lading, the trailer contained five cardboard boxes at the front of the trailer behind a vertical wall of cardboard about the same height as the pallets. Some of the buckets had fallen forward and crushed the boxes, which made the top of a box rip open. Hamrick could see packing peanuts lying inside the box. He stuck his hand into the packing peanuts and felt a large, cellophane bundle. Hamrick testified that, based upon his experience observing other inspections and searches, he knew the bundle contained contraband. He and Ezell then placed the defendants under arrest, and he advised Harris of his *Miranda* rights.

Shortly after Harris was placed under arrest, Ezell asked him whether the trailer was already loaded when he picked it up, and Harris said "no." Harris told Ezell that he put the boxes in the trailer, that he thought they were "clothes or something," and that when he got to the location he was to call someone. Harris refused to say whom he was to call.

On the following morning, Special Agent Anthony Lemons and Task Force Officer Seth Corbin of the Drug Enforcement Administration conducted an interview of Harris at the Crittenden County Detention Facility in West Memphis, Arkansas. Lemons read Harris his *Miranda* rights via a DEA 13a form, after which Harris described his involvement in transporting the five bundles of contraband wrapped in cellophane.[2]

---

[2] The DEA agents also interviewed Smith, who denied knowledge of the marijuana. Smith has not moved to suppress her statement.

## II.

In their motions to suppress, the defendants first argue that the incriminating statements that Harris made to Hamrick and Ezell before and after his arrest were unlawfully obtained because Harris had not been given his *Miranda* warnings at the time he gave the statements. They further argue that although Harris was given his *Miranda* warnings before making statements to the DEA agents, those statements also must be suppressed because they resulted from the unlawfully obtained statements the preceding day.

As officers of the Arkansas Highway Police, Hamrick and Ezell were authorized to require the operator of a motor carrier "to stop, exhibit, and submit for inspection all documents required to be carried in that vehicle or by that operator" and to "[i]nspect the contents of the vehicle for the purpose of comparing the contents with bills of lading, waybills, invoices, or other evidence of ownership or of transportation for compensation." Ark. Code Ann. § 23-13-217(c)(1)(A)-(B) (2009).[3] Although Harris was not free to leave until the completion of the inspection, he was not in custody for *Miranda* purposes, so the fact that he could not leave while Hamrick conducted the inspection did not trigger a right to *Miranda* warnings. *Cf. United States v. Pelayo-Ruelas*, 345 F.3d 589, 592 (8th Cir. 2003) (no *Miranda* warning is necessary for persons detained for a *Terry* stop).

Because Harris was not in custody, no *Miranda* warning was required from the time that Hamrick began his inspection until he discovered the marijuana. Immediately after finding the marijuana, Hamrick placed Harris under arrest and informed him of his *Miranda* rights. Harris's

---

[3] *Cf*. 49 C.F.R. § 396.9(a) (authorizing special agents of the Federal Motor Carrier Safety Administration to "enter upon and perform inspections of a motor carrier's vehicles in operation and intermodal equipment in operation").

statements to Ezell were made after Hamrick informed Harris of his *Miranda* rights. Therefore, Harris's motion to suppress his statements is denied.

### III.

The defendants also contend that the warrantless search of Harris's trailer was unlawful. That contention fails for two reasons. First, warrantless inspections are authorized under the regulatory exception to the warrant requirement announced in *New York v. Burger*, 482 U.S. 691, 107 S. Ct. 2636, 96 L. Ed. 2d 601 (1987). Such warrantless inspections do not violate the Fourth Amendment because closely regulated businesses have "a reduced expectation of privacy." *Id.* at 702, 107 S. Ct. at 2643. "Commercial trucking is a closely regulated industry within the meaning of *Burger*." *United States v. Mendoza-Gonzalez*, 363 F.3d 788, 794 (8th Cir. 2004). A warrantless inspection of a pervasively regulated business is valid under *Burger* if: (1) there is a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made; (2) the inspection is necessary to further the regulatory scheme; and (3) the scheme provides a constitutionally adequate substitute for a warrant. *United States v. Fort*, 248 F.3d 475, 480 (5th Cir. 2001); *see also United States v. Parker*, 587 F.3d 871, 878 (8th Cir. 2009). The Arkansas Motor Carrier Act authorizes the Arkansas Highway Police to inspect the contents of commercial vehicles for the purpose of comparing the contents with bills of lading. Ark. Code Ann. § 23-13-217(c)(1). The Eighth Circuit has held that "the Arkansas Motor Carrier Act provides a permissible warrant substitute." *United States v. Ruiz*, 569 F.3d 355, 357 (8th Cir. 2009). Therefore, the warrantless search of Harris's trailer was lawful whether or not valid consent to search was given.

Second, Harris gave Hamrick valid written and oral consent to search the trailer "and all contents." (Defs.' Ex. A-2/B-2.) The consent was voluntarily given and lawfully obtained. Smith

argues that the search of the trailer was unlawful because Hamrick did not obtain her consent. That argument ignores the fact that Hamrick needed no consent to inspect the contents of the trailer for reasons stated above. Setting aside the fact that Hamrick need no consent, as to whether Hamrick could rely on Harris's consent to search the trailer without obtaining consent from Smith, the issue is whether in light of the available facts a reasonable officer would have believed that Harris had authority over the trailer. *United States v. Chavez Loya*, 528 F.3d 546, 554 (8th Cir. 2008); *United States v. Czeck*, 105 F.3d 1235, 1239 (8th Cir. 1997). Here, it was reasonable for Hamrick to believe that Harris had the authority to consent to the search. Harris, not Smith, was driving the truck. Harris had a commercial driver's license (though one that had been suspended) whereas Smith had no commercial driver's license. Harris told Hamrick that he owned the company that owned the trailer and that Smith was just a passenger, which was consistent with the fact that Harris was driving and had a CDL whereas Smith was not and did not. Although Smith testified at the suppression hearing that she had contributed $1,500 to the purchase of the trailer, Hamrick had no reason to believe that Smith had an interest in the trailer or its contents. Finally, Smith was present when Hamrick searched the truck and trailer, but she never indicated that she had authority over the trailer nor did she object to the search of it. *Cf. United States v. Stapleton*, 10 F.3d 582, 584 (8th Cir. 1993) (it was objectively reasonable for the officer conducting the search of a vehicle to conclude he either had all the consent that was constitutionally required after receiving the driver's consent or had the passenger defendant's implied consent, given the defendant's silence during the search). Thus, Hamrick's search of the trailer was valid for a second reason: Harris consented to the search and it was reasonable for Hamrick to believe that Harris had authority to give that consent.

**CONCLUSION**

Based on the evidence adduced at the suppression hearing and the totality of the circumstances, the Court finds no violation of any of the defendants' constitutional rights. The defendants' motions to suppress are DENIED. Documents #22, #23, and #26.

IT IS SO ORDERED this 30th day of November, 2010.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE